| | | |
|---|---|---|
| LABORERS' PENSION FUND; LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY; and JAMES S. JORGENSEN, Administrator of the Funds, | ) ) ) ) ) ) ) ) | No. 12 cv 4254 Magistrate Judge Susan E. Cox |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| NOVAK AND SONS PAVING, INC., an Illinois corporation, d/b/a NOVAK & SONS PAVING, INC., also d/b/a NOVAK PAVING, INC.; STONEHILL LANDSCAPING, INC., an Illinois corporation, d/b/a GREENVIEW MAINTENANCE; MAUREEN NOVAK, individually, and d/b/a GREENVIEW MAINTENANCE; and JAMES E. NOVAK, individually, and d/b/a GREENVIEW MAINTENANCE, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs, Laborers' Pension Fund; Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity; and James S. Jorgensen, Administrator of the Funds (collectively, the "Funds"), sued Defendants, Novak and Sons Paving d/b/a Novak & Sons Paving, Inc., and also d/b/a Novak Paving, Inc. ("N&S"); Stonehill Landscaping, Inc. d/b/a Greenview Maintenance ("Stonehill"); Maureen Novak, individually ("Maureen") and d/b/a Greenview Maintenance; and James E. Novak, individually ("James") and d/b/a Greenview Maintenance (collectively, "Defendants"), to recover allegedly delinquent contributions to the Funds pursuant to the Employee Retirement Income

Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(e)(1) and (2) and 1145, Section

301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §

185(a), and 28 U.S.C. § 1331. This matter comes before the Court on the Funds' Motion for

Summary Judgment [Dkt. 119]. For the reasons stated below, the Court denies the Funds' Motion

for Summary Judgment.

## I. Factual Background

The corporate defendants in this matter, N&S and Stonehill, performed commercial and

residential construction work including sealcoating, paving, patching, resurfacing, excavating, saw-

cutting, striping, and stone work. [Funds' Statement of Material Facts ("FSOF"), ¶¶ 18, 33.] Some

N&S and Stonehill work was performed by union employees. [*Id.* at ¶ 23, 34.] The applicable

collective bargaining agreement ("CBA") and Trust Documents obligate the corporate Defendants

to make contributions "for each hour worked" on behalf of its employees covered by the CBA for

pension benefits, health and welfare benefits, and/or benefits for the training fund. [*Id.* at ¶ 13.]

The documents also require the corporate Defendants to submit monthly reports regarding CBA-

covered-employees and the amount of contributions to be remitted to the Funds on behalf of each

covered employee. [*Id.*] The Funds then collect employer contributions from the wages of

employees in payment of union dues. [*Id.* at ¶ 4.]

In the instant matter, the Funds undertook an audit of the corporate Defendants' books

and records to determine compliance with the Funds' reporting and contribution procedures, and

to calculate whether there were any amounts owing to the Funds.[1] [Dkt. 120, p. 8.] The Funds'

---

[1]    Defendants have objected to the term 'audit' to describe this process. While the Court employs that term
throughout this opinion, the Court finds compelling the Seventh Circuit's comments concerning an audit
conducted in a similar matter, *Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890
(7th Cir. 2009). In *Cork Plastering*, the court found:
     [t]he data underlying the [auditing firm's] report were [] derived from [the company's] payroll

initial audit was undertaken only on corporate Defendant N&S, and covered the time period of January 1, 2008 through January 31, 2011.[2] [FSOF, ¶ 59.] This audit period was later extended to January 1, 2008 through December 31, 2014, and covered both corporate Defendants, N&S and Stonehill ("Second Audits"). [*Id.*] As it appears that neither party has attached the Second Audits to any document filed in this case, the Court cannot tell when the Second Audits were issued.

The Second Audits for both corporate Defendants were subsequently revised based on challenges submitted by the Defendants ("Revised Audits"). [*Id.* at ¶ 61.] As part of the process that led to the Revised Audits, the Defendants submitted Declarations from some, but not all, of the individuals who received non-payroll payments analyzed on the audits. [*Id.*] Also, "[d]uring the course of this litigation and audit process [the Defendants] provided the names and address of all employees of Stonehill" to the Funds.[3] [Dkt. 136-14; Dkt. 136-1, ¶ 23.] After consideration of the challenges raised by Defendants, the Revised Audits were issued on June 6, 2016. [Dkt. 122-1, ¶ 10, pp.7-8; Dkt. 129, pp. 42-71]. The Revised Audits are the basis for the Funds' calculation of damages in this case. [Dkt. 120, p. 2.] The total audit liability reflected in the Revised Audits is $663,684.57. [FSOF, ¶¶ 63-65, 67, 68, 70.]

Under each of the audits and revisions mentioned above, the auditor, Timothy Kalnes,

---

> records. But the report's conclusions as to what [the company] owed [the Funds] based on that data were driven by a set of procedures or assumptions agreed to by [the auditor] and its clients. The report was not an audit opinion in the sense that it expressed a professional judgment about what [the company] owed the plaintiffs; [the auditor] did not vouch for the validity of the assumptions employed but merely tabulated what the company might owe assuming the validity of the assumptions.

570 F.3d at 899. The Court does not, nor does it need to, reach a conclusion as to whether the Independent Accountant's Reports in this matter meet a technical definition of an audit.

[2] The Independent Accountant's Report indicates the initial audit was issued on September 30, 2011. [Dkt. 1, pp. 16-17.]

[3] Contrary to the Funds' assertions [Dkt. 143, n.1], Maureen's affidavit does not have to be notarized to be valid, as it has been certified by verification under the penalties of 735 ILCS 5/109, where any person who makes a false statement under said certifications shall be guilty of a Class 3 felony. Maureen's affidavit also satisfies the personal knowledge requirements of F.R.C.P. 56(c)(4).

applied what is known as the "Chicago 10" procedure to all payments made to any employee where the employee's hourly rate is unknown. [Funds' Supplemental Statement of Material Facts ("FSSOF"), ¶¶ 2, 11.] Although neither party explains well how the Chicago 10 procedure operates (*e.g.*, the Funds never even mention this key term in their opening brief), the Court will endeavor to explain it as follows. When reviewing payroll records during an audit, the auditor may find that an employee will receive more than one pay rate for different job functions under the CBA; or an employee will receive a payment outside of the normal payroll such as a bonus or a cash payment/reimbursement (*i.e.*, a non-payroll payment); or an employee will perform some work covered by a CBA and some that is not. Non-payroll payments can create a problem for auditors because there is typically no designation of whether the payment was issued for covered or non-covered work under the relevant CBA and, thus, the auditor will not be able to tell what work was being performed at what rate and if contributions are owed to any ERISA fund based on that work.

To compensate for this issue, an auditor attempting to determine if a union employer made proper ERISA contributions will assume that, unless otherwise specified, any individual who receives a non-payroll payment from the employer is a laborer performing work covered under an applicable CBA. For example, if an individual receives a non-payroll payment of $100 and her hourly rate cannot be determined for such payment, an auditor applying the Chicago 10 would assume this payment was made to the employee for CBA-covered-work she performed at an hourly rate of $10.00, thus concluding the employee worked 10 hours in exchange for that $100 payment; the employer would then potentially be liable to the ERISA funds for any unpaid contributions based on these 10 hours worked by the employee.

However, if the hourly rate applied by the auditor was increased, the number of hours for

4

which an employer would potentially be liable to the funds would shrink. For example, if a rate of $20.00 an hour were assumed by the auditor for that same $100 non-payroll payment, the auditor would conclude the employee worked 5 hours in exchange for that $100 payment, and thus, the employer would potentially be liable for any unpaid contributions based on these 5 hours worked by the employee. Hence, an increase in the hourly rate applied by the auditor would necessarily reduce the number of hours for which any audited employer would potentially owe contributions.

Here, however, the Funds have placed at issue a fact they find material to this matter, bearing on this exact issue: the existence of the "Chicago 18" procedure.[4] Specifically, the Funds' Supplemental Material Fact No. 16 states that "[o]n or about November 9, 2015, the Funds later revised the Chicago 10 procedure by amending the hourly wage rate assumption from $10.00 an hour to $18.00 an hour." [FSSOF, ¶ 16.] The Kalnes Affidavit and its exhibits [Dkt. 147, pp. 18-29] submitted by the Funds shed no light on the effective dates of the Chicago 18 procedure, although Kalnes does affirm that under the revised procedure "auditors *are now to reasonably assume that those payments were made to the employee for work performed at an hourly rate of $18.00.*" [*Id.*, p. 20, ¶ 9 (emphasis added).] Although the Revised Audits were issued June 6, 2016, roughly seven months after the Chicago 18 procedure was implemented (November 9, 2015), the Chicago 18 rate was not applied to the Revised Audits.

It appears that the Kalnes Affidavit, and the Funds' Supplemental Material Fact No. 16, both submitted as part of the Funds' Reply, might have been the first inkling given to Defendants that the Chicago 10 procedure had been revised, as Defendants brief largely centers around whether $10.00 an hour was a reasonable assumption made by the auditor.[5] Curiously, though,

---

[4]    In keeping with the parlance of this case, the Court will refer to this revised procedure as the "Chicago 18."

[5]    On this point, Defendants included deposition testimony of Howard Levinson [Dkt. 136-3], a principal of

neither Party discusses the Chicago 18 in its briefs.

## II. Standard of Review

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette Indiana*, 359 F.3d 925, 928 (7th Cir. 2004). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Cellotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Cellotex*, 477 U.S. at 322. "The mere existence of a scintilla of

---

Calibre, the auditing company used by the Funds in this matter. The Funds argued for its inadmissibility as the deposition comes from a different case. If Defendants had tried to sustain their burden of establishing the admissibility of the Levinson testimony instead of failing to even note the deposition was taken in a different case (albeit with the same plaintiffs as the instant matter, who had an opportunity to question Mr. Levinson about the Chicago 10), the Court might have been inclined to consider the testimony. *See Wallace v. City of Tarpon Springs*, 2007 WL 128839, at *3 (M.D. Fla. Jan. 12, 2007) ("[C]ourts have found that the requirement that the parties be the same in both actions is not controlling in determining admissibility under [Fed. R. Civ. Pro.] 32(a)(4). The main questions as to the admissibility of a deposition under Rule 32(a)(4) are whether the underlying issues are the same and whether the party opposing the deposition's admission had adequate motive and opportunity to develop the witness' testimony as relevant to the case at hand."). However, the burden of proving that deposition testimony is admissible falls on the proponent of the testimony. *Hughes v. City of Chicago*, 673 F. Supp. 2d 641, 652 (N.D. Ill. 2009) (citing *Wallace*, 2007 WL 128839, at *3-4 (granting motion to strike deposition testimony of witness "never referenced in this case through Rule 26 disclosures or in response to any discovery request," whose "name was first referenced in Plaintiffs' motion for summary judgment")). Even if Defendants made persuasive admissibility arguments, they also have the unexplained failure to disclose Mr. Levinson in their discovery responses. Therefore, irrespective of the fact this decision hinges on FSSOF ¶ 16, the Court is unable to consider Mr. Levinson's deposition testimony about the Chicago 10 procedure.

evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

## III. Discussion

### A. The "Chicago 10" v. the "Chicago 18"

Although the Court had the burdensome task of sorting out the details of the wordy mire submitted by Defendants,[6] the Court believes that there is a genuine issue of material fact as to the existence and extent of Defendants' liability to the Funds as revealed by the Revised Audits such that summary judgment would be inappropriate.

ERISA's recordkeeping and reporting requirements "require[] an employer to maintain time records or similar records of hours worked by employees in order to permit ERISA plans to calculate benefits due and to fulfill their reporting duties." *Chicago Steel & Crane, Inc. v. Structural Ironworkers Local No. 1 Welfare Fund, No. 00 C 1615,* 2002 WL 1610980, at *5 (N.D. Ill. July 22, 2002) (referencing 29 U.S.C.A. § 1059). In matters such as the instant one, "[w]here trust funds attempt to collect delinquent employer contributions, courts have imposed a presumption in favor of the funds regarding proof of the extent of damages." *Chicago Steel,* 2002 WL 1610980, at *5. Nevertheless, Defendants are not entirely correct that it is solely the Funds' burden to show the auditor's assumptions were reasonable under the circumstances. Rather,

> [i]f the funds establish that the employer has failed to make contributions for employees covered under the collective bargaining agreement and they also establish a breach of section 1059 (failure to keep accurate employee records), then the Funds need only produce sufficient evidence to show the amount and extent of that work as a matter of just and a reasonable inference, which, in turn, shifts to the employer the burden to produce evidence of the precise amount of work

---

[6] In its review of the summary judgment materials submitted to the Court, the Court struggled mightily with the question of whether to exercise its discretion to strike certain unsupported facts cited by Defendant. Ultimately, the Court has not exercised its discretion to do so here. Any stricken facts would not have had an impact on the Court's analysis, as the Court's decision hinges on the uncertainty of whether recoverable damages exist in the instant matter.

performed or evidence to negate the reasonableness of the inferences to be drawn from the Funds' evidence.

*Id.* (citations and signals omitted).

However, before this burden shifting-analysis becomes applicable, "the Funds must prove the fact of damage." *Id.* (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946) (the "rule applies only to situations where the fact of damage is itself uncertain.")). In this regard, "in a case where the fact of damage or injury is an element of the claim, there can be no liability without proof that there is injury or damage." *Patrick Schaumburg Automobiles, Inc. v. Hanover Ins. Co.*, 452 F. Supp. 2d 857, 866 (N.D. Ill. 2006). This is so because "if there is a question of fact as to the existence of any damages, summary judgment should not be granted. Rule 56(c) contemplates a procedure which clears away all matters except a prove-up or computation of damages after the existence of some recoverable damages is established." *Id.* at 866-67 (citing *Berman v. Thomson*, 45 F.R.D. 342, 344 (N.D.Ill.1968) vacated on other grounds, 312 F.Supp. 1031 (N.D.Ill.1970) (citing to 6 Moore, Federal Practice, ¶ 56.17 at p. 2529 in denying summary judgment on liability where defendant's liability hinged on whether there were recoverable damages) (signals omitted)).

The Court finds doubt as to the existence of recoverable damages in the instant matter because the Chicago 18 is a material fact in this case. Yet Defendants were not given the benefit of this higher wage assumption in the Revised Audits, despite the Revised Audits being issued some seven months after the Chicago 18 procedure was implemented. Application of the Chicago 18 would undoubtedly change the entire landscape of the Revised Audits and, thus, the existence of any damages is in doubt as the matter now sits before the Court; neither party has done the math and therefore the Court is unable to say whether any damages would exist under the revised wage benchmark of the Chicago 18. In essence, this is a rather fundamental application of the mandate

to "construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley*, 359 F.3d at 928. The Court cannot grant summary judgment because of the genuine issue of material fact as to the existence of Defendants' liability to the Funds as revealed by the Revised Audits.

## B. Additional Errors in the Revised Audits

Although the Court could end its analysis there, it appears there are errors in at least five of the individuals included within the Revised Audits. Basically, there are five individuals included within the audits who may not have been employees of the corporate Defendants. These individuals are: Marilyn Barton (attorney), Daniel Martinez (outside mechanic), Kevin O'Kelley (outside mechanic), Roger Miller (paid a commission for a referral), and Dennis Bradley (outside electrician). [Dkt. 136-1, pp. 6-7, ¶¶ 28-31.] The Parties do not discuss whether information relating to these outside individuals was submitted to rebut either the first or second audits, but Maureen does aver that "[d]uring the course of this litigation and audit process we provided the names and address of all employees of Stonehill." Dkt. 136-1 ¶23. This likely should have been enough to put the auditor on notice that these individuals were not Stonehill employees and that, if nothing else, further inquiry was required before merely assessing them at the Chicago 10 rate.

Additionally, Maureen affirms personal knowledge of the fact that Barton, Martinez, O'Kelley, Miller, and Bradley were not employees of the Defendant corporations and further affirms what functions they were paid to perform for Defendants. [Dkt. 136-1, pp. 6-7, ¶¶ 28-31.] Although these paragraphs of Maureen's affidavit are not independently supported with outside documentation, some of this documentation (specifically, Barton's ARDC attorney registration record) is attached as an exhibit to Defendants' Statement of Additional Material Facts [*see* Dkt. 136-5]. However, even without cites in Maureen's affidavit to this documentation, the Court is

convinced that Maureen's personal knowledge as the "shareholder and the Vice-President, Treasurer and Secretary of Novak and Sons Inc." [Dkt. 136-1, ¶1], "sole shareholder and...Secretary of Stonehill Landscaping, Inc." [Dkt. 136-1, ¶10], and as an individual who signed checks for both N&S and Stonehill [FSOF, ¶¶ 29, 39] is enough to support the affirmations of Paragraphs 28-31 of her Affidavit. In short, the Court is satisfied Maureen knows who she hired and why.

However, although Defendants argue they made challenges to the audit procedure relative to the above, and that that "these challenges were rejected" as to the attorney, mechanics, electrician, and commissions paid out [Dkt. 133, p. 4], Defendants fail to point to any fact supporting this assertion.[7] The Court simply cannot tell (from either Party's papers) when, how, and/or if these challenges were made during the actual audit process.

> "In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." *Pleniceanu v. Brown Printing Co.*, No. 05 C 5675, 2007 WL 781726, at *7 (N.D.Ill. Mar.12, 2007) (citing *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir.2003)); *see also, Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir.2005) ("We will not scour a record to locate evidence supporting a party's legal argument."); *Knapp v. County of Jefferson*, No. 06 CV 4028, 2007 WL 496396, at *1 (S.D.Ill. Feb. 13, 2007) (denying summary judgment where defendant's brief "contains no facts section and ... fail[s] to point to the relevant portions of the record to establish the facts of this case").

*Bridgeview Health Care Ctr. Ltd. v. Clark*, 2011 WL 4585028, at *2 (N.D. Ill. Sept. 30, 2011).

---

[7] Defendants also assert they "challenged the mechanics, the attorney, the electrician, the office employees and the snow plowing activity. These challenges were rejected" [Dkt. 133, p. 7], but again fail to cite to the record in support of when or how these challenges were made and/or rejected, as to either the individuals the Court has already discussed or the office employees/snow plowing activity. Furthermore, as to the office employees, the individual Defendants' affidavits contradict each other as to the number of office staff employed by Stonehill. The Court finds it baffling James Novak would either not know or fail to affirm that his daughter worked full time in the Stonehill office as Maureen states. *Compare* the Affidavit of Maureen Novak, ¶ 24 [Dkt. 136-1, p. 6] *with* the Affidavit of James E. Novak, ¶ 16 [Dkt. 136-1, p. 2-3]. The Court need not analyze at this juncture whether this is an egregious drafting error or something more nefarious.

Therefore, while the Court need not scour the record to help Defendants support their arguments in this case, the Court is nevertheless concerned that these five (at a minimum) individuals likely should have not have the Chicago 10 (or Chicago 18 as the case may be) procedure applied to payments made to them as Maureen's affidavit and Defendants' supporting documentation indicate these individuals were not laborers covered by any applicable CBA. Again, however, the Court is unable to and makes no finding as to whether these challenges were made at the appropriate audit process juncture.

Although the Court has expressed concern about several probable errors in the Revised Audits, the Court's denial of summary judgment hinges on the existence of a genuine issue material fact concerning liability in this matter, which hinges on damages. The evidence before the Court concerning the Chicago 18 is such that a reasonable jury could return a verdict for the Defendants. *See Anderson*, 477 U.S. 242. Thus, denial of summary judgment is appropriate in the instant matter.

IV.     **Conclusion**

For the foregoing reasons, the Court denies the Funds' Motion for Summary Judgment.


Enter: 3/23/2017

_____
U.S. Magistrate Judge, Susan E. Cox